```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
_____
                               )
EDUARDO TAYLOR,                )
                               )
              Plaintiff,       )
                               )     Civil Action
v.                             )     No. 24-cv-11479-PBS
                               )
JOHN C. PHELAN, SECRETARY OF THE )
NAVY,                          )
                               )
              Defendant.       )
_____)
```

**MEMORANDUM & ORDER**

August 14, 2025

Saris, J.

**INTRODUCTION**

Ex-Marine Eduardo Taylor challenges the decision of the Board for Correction of Naval Records ("BCNR" or "the Board"), a civilian board within the Department of Navy, that denied his request to upgrade his discharge status from Other-Than-Honorable ("OTH") to Honorable. Taylor contends that, at the time of his service, he had undiagnosed post-traumatic stress disorder ("PTSD") and major depressive disorder caused by racism that mitigated his pattern of misbehavior. He argues that the Board's denial was arbitrary and capricious under the Administrative Procedure Act ("APA") and that the Board failed to faithfully follow guidance from binding Department of Defense ("DOD") memoranda requiring liberal consideration of PTSD and other mental health conditions in

1

discharge cases. The parties have filed cross-motions for summary judgment.

After a hearing, the Court **DENIES** Taylor's motion for summary judgment (Dkt. 24) and **ALLOWS** the Secretary of the Navy's cross-motion for summary judgment (Dkt. 31).

## BACKGROUND

### I. Military Service

Taylor, an African American male, grew up in Medford, Massachusetts, in the late 1970s where he experienced racism. In 1981, Taylor joined the Army National Guard two months after graduating from Medford High School and served for two years. During that time, he began drinking alcohol and experimenting with marijuana.

On December 22, 1983, Taylor enlisted in the Marine Corps. He completed bootcamp, graduating as platoon "Honorman" in 1984, and attended Amphibious Assault Vehicle Training. He was assigned as a Private First Class to Company C, 3d Assault Amphibian Battalion, 1st Marine Division, FMF, Camp Pendleton ("Charlie Company").

While in Charlie Company, he was subjected to racial epithets and physical harassment by fellow marines. Traumatized, Taylor drank alcohol to excess. While drunk, he got into a fight with two lance corporals. Although he claims there were no hard feelings, he was found guilty of assault.

During his service in Charlie Company, Taylor received three non-judicial punishments ("NJPs") for disrespectful language, assault, and wrongful appropriation of a stereo. He denied the stereo theft charge, contending that it was later dropped when the Marine who implicated him recanted. He also received four administrative counseling sessions for poor judgment, lack of professionalism, professional deficiencies, and driving under the influence ("DUI"). In June 1986 he tested positive for cocaine, but he denies intentionally using drugs.

Taylor was placed in summary court martial proceedings ("SCM") based on his violation of base driving privileges after his DUI and the positive drug test. He was acquitted of the drug charge but found guilty of driving without privileges.

Following that proceeding, Taylor was transferred to a new command where there were no further racial incidents or disciplinary problems. Nevertheless, the Corps initiated separation proceedings for "a pattern of misconduct." AR 48.[1] The Separation Board cited (1) disrespectful language to a corporal in 1984, (2) Taylor's altercation with two lance corporals, (3) the stereo theft, and (4) driving without base privileges. It recommended, and the Corps approved, an OTH discharge for

---

[1] Citations to "AR" refer to the Bates-stamped page numbers in the Administrative Record filed by the parties.

3

misconduct by reason of a "Pattern of Misconduct." Id. at 7. Taylor was discharged on December 4, 1986.

Over the next three decades, Taylor struggled with alcohol and drug use and, at times, physical aggression. In 2018, he began therapy and has remained sober since. In 2021, a psychologist at the Veterans Administration diagnosed him with PTSD related to his military service.

## II.  Board Proceedings

On December 1, 2022, Taylor applied to the BCNR for an upgrade of his OTH discharge to Honorable, contending that racial discrimination and harassment during service caused PTSD and depression that mitigated his misconduct. He submitted a psychologist's report, a personal affidavit, character references, and documentation of post-service accomplishments. The BCNR also received an advisory opinion from a staff psychologist, who concluded that "[i]t is possible that some of [Taylor's] misconduct could be attributed to undiagnosed symptoms of PTSD or depression." Id. at 327.

On May 2, 2023, the BCNR issued a written decision denying Taylor's application. It concluded that "the mitigation evidence [Taylor] provided was insufficient to outweigh the seriousness of [his] misconduct." Id. at 4. As to the Board's treatment of the diagnoses, the Board stated as follows:

4

z
w

> In accordance with the Kurta, Hagel, and Wilkie Memos, the Board gave liberal and special consideration to your record of service, and your contentions about mental health and the possible adverse impact your mental health had on your conduct during service. Specifically, the Board felt that your misconduct, as evidenced by your three NJPs and SCM, outweighed these mitigating factors. The Board considered the seriousness of your misconduct and the fact that it involved assault and a DUI. Further, the Board also considered the likely negative impact your conduct had on the good order and discipline of your command. The Board determined that such misconduct is contrary to the Marine Corps values and policy, renders such Marine unfit for duty, and poses an unnecessary risk to the safety of fellow service members.

Id. at 3.

The Board also noted that Taylor had not been diagnosed with mental health conditions during service and denied any such issues at separation and that the PTSD diagnosis was "temporally remote" from his service. Id. at 3-4. It found that some "misconduct was not due to mental health-related symptoms" but "was intentional and demonstrated [he was] unfit for further service." Id. at 4. The Board acknowledged Taylor's post-service accomplishments, but found that they did not mitigate his in-service misconduct.

## DISCUSSION

### I. Legal Standard

#### A. Administrative Procedure Act

The APA allows a court to "set aside an agency decision if that decision is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or if the decision is

5

'unsupported by substantial evidence.'" Mahoney v. Del Toro, 99 F.4th 25, 34 (1st Cir. 2024) (quoting Sasen v. Spencer, 879 F.3d 354, 359-60 (1st Cir. 2018)); see 5 U.S.C. § 706(2)(A), (E). This standard governs "judicial review of BCNR decisions." Mahoney, 99 F.4th at 34. In conducting this review, the court must examine "the whole record or those parts of it cited by a party." Id. (quoting Sasen, 879 F.3d at 360); see 5 U.S.C. § 706.

"Judicial review of agency decisions is 'highly deferential.'" Mahoney, 99 F.4th at 34 (quoting Atieh v. Riordan, 797 F.3d 135, 138 (1st Cir. 2015)). Thus, "a reviewing court must uphold an agency's decision that is free from 'legal errors' and 'is supported by any rational review of the record.'" Id. (citation omitted) (first quoting United States v. Sawyer, 521 F.3d 792, 794 (7th Cir. 2008); and then quoting Atieh, 797 F.3d at 138). The "court 'may not substitute its judgment for that of the [BCNR], even if it disagrees with the [BCNR's] conclusions." Id. (alterations in original) (quoting Atieh, 797 F.3d at 138).

**B.    Statutory Standard**

Under 10 U.S.C. § 1552(a)(1), the "Secretary of the Navy may through the BCNR 'correct any military record of the [Navy] when the Secretary considers it necessary to correct an error or remove an injustice.'" Id. (alteration in original) (quoting 10 U.S.C. § 1552(a)(1)). This "language 'enable[s] the Secretary, acting through a civilian Correction Board, to change the kind of

6

discharge a former service [member] ha[s] received." Id. (alterations in original) (quoting Ashe v. McNamara, 355 F.2d 277, 280 (1st Cir. 1965)). The First Circuit has held that the language of § 1552(a)(1) "substantially restrict[s] the authority of the reviewing court to upset the Secretary's determination" and imposes an "unusually deferential standard of review." Id. at 34 & n.2 (quoting Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989)). Other circuits agree. See, e.g., Bolton v. Dep't of the Navy Bd. for Corr. of Naval Recs., 914 F.3d 401, 407 (6th Cir. 2019) (explaining that the court's "review involves 'an unusually deferential application of the "arbitrary or capricious" standard' of the APA" (quoting Kreis, 866 F.2d at 1514)); Williams v. Wynne, 533 F.3d 360, 368 (5th Cir. 2008) ("In light of this language, the review of military board judgments is 'exceptionally deferential.'" (quoting Viles v. Ball, 872 F.2d 491, 495 (D.C. Cir. 1989))).

"Under its regulations, the BCNR 'relies on a presumption of regularity to support the official actions of public officers,' and an applicant must present 'substantial evidence' of 'probable material error or injustice' to overcome this presumption." Mahoney, 99 F.4th at 35 (quoting 32 C.F.R. § 723.3(e)(2)). Accordingly, "'the Board may deny relief if it concludes that "the evidence of record fails to"' refute this presumption." Id. (quoting Sasen, 879 F.3d at 360-61); see 32 C.F.R. § 723.3(e)(2).

7

The statute directs the BCNR to apply "liberal consideration" when a "claim . . . for review of a discharge or dismissal is based in whole or in part on matters relating to [PTSD] or traumatic brain injury as supporting rationale" and the "[PTSD] or traumatic brain injury is related to combat or military sexual trauma as determined by the Secretary." 10 U.S.C. § 1552(h)(1), (2)(B); see Mahoney, 99 F.4th at 35. Under such circumstances, the BCNR must "review the claim with liberal consideration to the claimant that [PTSD] or traumatic brain injury potentially contributed to the circumstances resulting in the discharge or dismissal or to the original characterization of the claimant's discharge or dismissal." 10 U.S.C. § 1552(h)(2)(B); see Mahoney, 99 F.4th at 35.

## C. Department of Defense Memoranda

As the First Circuit has explained:

> [DOD] has issued memoranda which advise Boards for Correction of Military and Naval Records on review of these claims. On September 3, 2014, a memorandum was issued by then Secretary of Defense Chuck Hagel to the secretaries of the military departments ("Hagel Memo"), providing supplemental policy guidance for Boards reviewing petitions to upgrade discharge statuses based on claims of previously unrecognized PTSD diagnoses. The Hagel Memo is "not intended to interfere with or impede the Boards' statutory independence to correct errors or remove injustices through the correction of military records." [Dkt. 27-1 at 2.] The memorandum provides that "[l]iberal consideration will be given in petitions for changes in characterization of service to Service treatment record entries which document one or more symptoms which meet the diagnostic criteria of [PTSD] or related conditions." [Id. at 4.] The Hagel Memo further

8

provides that "[i]n cases in which PTSD or PTSD-related conditions may be reasonably determined to have existed at the time of discharge, those conditions will be considered potential mitigating factors in the misconduct that caused the under other than honorable conditions characterization of service." [Id.]

On August 25, 2017, then Undersecretary of Defense Anthony Kurta issued a memorandum ("Kurta Memo") whose purpose, among others, is to provide "clarifying guidance to . . . Boards for Correction of Military/Naval Records . . . considering requests by veterans for modification of their discharges due in whole or in part to mental health conditions, including [PTSD]." [Dkt. 27-3 at 3.] Like its predecessor, the Kurta Memo's guidance is "not intended to interfere with or impede the Boards' statutory independence." [Id. at 2.] In that context, the Kurta Memo states that among its guidance, "[c]onditions or experiences that may reasonably have existed at the time of discharge will be liberally considered as excusing or mitigating the discharge." Id. at 4.

On July 25, 2018, a memorandum was issued by then Under Secretary of Defense Robert Wilkie ("Wilkie Memo"). The Wilkie Memo provides "standards for . . . Boards for Correction of Military/Naval Records . . . in determining whether relief is warranted on the basis of equity, injustice, or clemency," and reinforces the BCNR's broad discretion in reviewing claims. [Dkt. 27-4 at 3.] The memorandum specifies that its "guidance does not mandate relief, but rather provides standards and principles to guide [the Boards] in application of their equitable relief authority. Each case will be assessed on its own merits. The relative weight of each principle and whether the principle supports relief in a particular case, are within the sound discretion of each board." [Id.]

Mahoney, 99 F.4th at 35-36 (footnote omitted).[2] These memoranda are binding on the Board when reviewing discharge upgrade

---

[2] The Court has supplied citations to the record in this case for quotations from the Hagel, Kurta, and Wilkie memoranda. Other alterations are in the original.

petitions. See Doyon v. United States, 58 F.4th 1235, 1239 (Fed. Cir. 2023).

## II. Analysis

Taylor argues that the Board's denial of his petition must be set aside because the Board (1) failed to faithfully apply the DOD memoranda by discounting his PTSD diagnosis as "temporally remote," (2) inadequately explained its conclusions, (3) did not consider his conduct after Charlie Company and relied on speculation, and (4) failed to treat him consistently with similarly situated applicants. Applying the "unusually deferential standard," Mahoney, 99 F.4th at 34 n.2, the Court considers each argument in turn.

### A.   Application of the DOD Memoranda

First, Taylor asserts that the Board failed to faithfully apply the principles of the Hagel, Kurta, and Wilkie memoranda by downplaying his service-connected PTSD and major depressive disorder as "temporally remote to [his] service." AR 3. The record shows otherwise. While the Board noted that the diagnoses were made decades after his discharge, it explicitly stated that it was giving them "liberal and special consideration" and did not dispute their validity. Id. Specifically, the Board recognized the "possible adverse impact [Taylor's] mental health had on [his] conduct during service." Id. The BCNR nonetheless concluded that

10

the misconduct "posed an unnecessary risk to the safety of fellow service members." Id.

The DOD memoranda do not compel a finding that PTSD and related conditions mitigated all misconduct. The Hagel Memo cautions that in cases of "serious misconduct" resulting in an OTH discharge, "[p]otentially mitigating evidence of the existence of undiagnosed combat-related PTSD or PTSD-related conditions . . . will be carefully weighed against the severity of the misconduct." Dkt. 27-1 at 4-5 (emphasis added). Similarly, the Kurta Memo provides that "the severity of misconduct may outweigh any mitigation from mental health conditions." Dkt. 27-3 at 5. In its weighing, the Board cited "the seriousness of [Taylor's] misconduct," including "the fact that it involved assault and a DUI" and "the fact that [he was] driving while in a suspended status after being arrested for DUI and totaling [his] car." AR 3-4. This reasoning aligns with precedent holding that the Board may reasonably conclude that the severity of misconduct outweighs mitigating factors, even where PTSD is established. See Mahoney, 99 F.4th at 36–37 (upholding denial where BCNR gave liberal consideration but found drug-related misconduct dispositive). While the racial incidents Taylor describes are serious, the BCNR's conclusion that his misconduct outweighed mitigating factors reflects precisely the type of discretionary weighing contemplated by the DOD memoranda and entitled to deference under the APA.

11

### B.   Adequacy of the Board's Explanation

Second, Taylor argues that the Board failed to adequately explain two aspects of its decision. Specifically, the Board concluded that some of Taylor's misconduct "was not due to mental health-related symptoms [but], rather, was intentional and demonstrated [he was] unfit for further service," without specifying which incidents it considered intentional, how that conduct rendered him unfit, or why the mitigating evidence was insufficient. AR 4. He also challenges as illogical the Board's statement that "[a]s Taylor denies the charges of theft and cocaine usage, that misconduct cannot be attributed to a mental health condition." Id. at 3. The Court agrees that a denial of the underlying allegations does not, by itself, foreclose the possibility that the conduct, if it occurred, was influenced by a mental health condition.

Nonetheless, the record demonstrates that the BCNR's decision rested on the DUI, the assaults, and their "negative impact" on the "good order and discipline" of the command, not the theft or cocaine allegations. Id. The Board was not required to accept Taylor's explanation that the assaults were minor and that "there were no hard feelings." Id. at 46; see Mahoney, 99 F.4th at 36-37 (upholding BCNR's rational rejection of petitioner's effort to minimize the misconduct).

12

Moreover, while the Board's opinion could have identified which conduct it found was likely unrelated to Taylor's PTSD and mental illness, an agency's decision need not "be a model of analytic precision to survive a challenge." Dickson v. Sec'y of Def., 68 F.3d 1396, 1404 (D.C. Cir. 1995). Rather, the question is whether the Board articulated a rational connection between the evidence and its conclusion. See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Here, the BCNR's emphasis on the nature of the DUI and assault, and their adverse effect on unit discipline, provides such a connection.

### C. Impact on Good Order and Discipline

Third, Taylor points to his strong in-service performance after leaving Charlie Company and his subsequent good conduct as evidence undermining the BCNR's conclusion that his misconduct had a negative impact on his command and rendered him unfit for duty. The record reflects that after his transfer, he experienced no further disciplinary incidents and received positive evaluations, and in recent years he has maintained sobriety and been an active member of his community. Commendable as these facts are, rehabilitation and post-transfer performance are only two of many factors the BCNR must consider under the DOD memoranda. See Dkt. 27-4 at 5. Under the deferential standard of review, the Court cannot reweigh those factors in place of the BCNR. See Conservation

L. Found. of New Eng., Inc. v. Sec'y of the Interior, 864 F.2d 954, 958 (1st Cir. 1989) ("It is important to note that this Court cannot substitute its own judgment for that of the agency.").

Taylor further argues that, in light of his strong performance after leaving Charlie Company, the BCNR's conclusion that his misconduct "likely" had a negative impact on the unit is speculative. AR 3. The record, however, supports the BCNR's determination that Taylor's assaults, DUI, and unauthorized use of a vehicle were serious offenses that could reasonably be viewed as threatening the "good order and discipline" of the command. Id. While reasonable minds might weigh the evidence differently, the BCNR's judgment on this point falls within the broad discretion afforded to it under 10 U.S.C. § 1552(a)(1) and the APA.

### D. Comparison to Allegedly Similarly Situated Applicant

Finally, Taylor argues that the Board erred by failing to treat him the same as another applicant who experienced racial discrimination during service and successfully obtained an upgrade from a general to an honorable discharge. See id. at 71–74. "It is axiomatic that '[a]n agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so.'" Wilhelmus v. Geren, 796 F. Supp. 2d 157, 162 (D.D.C. 2011) (alteration in original) (quoting Kreis v. Sec'y of Air Force, 406 F.3d 684, 687 (D.C. Cir. 2005)).

14

This obligation arises when cases are similarly situated. But, as the government points out, the comparator case differs from Taylor's. The comparator sought to upgrade a general discharge, not an OTH discharge; the nature and severity of his underlying misconduct differed; and the comparator did not assert PTSD or another mental health condition as a basis for relief.

Ultimately, under the Court's "unusually deferential" review, Taylor has not provided "'substantial evidence' of 'probable material error or injustice,'" and the Court therefore upholds the BCNR's decision. Mahoney, 99 F.4th at 34 n.2, 35 (quoting 32 C.F.R. § 723.3(e)(2)).

## ORDER

For the foregoing reasons, the Court **DENIES** Taylor's motion for summary judgment (Dkt. 24) and **ALLOWS** the Secretary's cross-motion for summary judgment (Dkt. 31).

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge